**Thomas O'LEARY, Plaintiff,**

v.

**Dominick LUONGO, Kim Revolta, unknown conspirators, and Village of Elmhurst, Board of Police and Fire Commissioners of Village of Elmhurst, Defendants.**

**No. 86 C 0997.**

United States District Court, N.D. Illinois, E.D.

Aug. 3, 1988.

---

Kenneth Ditkowsky, Ditkowsky & Contorer, Chicago, Ill., for plaintiff.

James R. Schirott, Charles E. Hervas, James G. Sotos, Schirott & Assoc., Itasca, Ill., Kenneth Kubiesa, Borla Kubiesa & Power, Westmont, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Thomas O'Leary brings this six-count action for relief under 42 U.S.C. § 1983, charging various civil rights violations, false arrest and battery arising out of alleged incidents of harassment and intimidation by the Village of Elmhurst ("Elmhurst") generally and police officers Dominick Luongo and Kim Revolta specifically. O'Leary seeks compensatory and injunctive relief. The defendants move for summary judgment which, for the reasons set forth below, we grant in part and deny in part.

### Factual Background and Procedural History

This action arises out of numerous incidents spanning a period of three years and involving O'Leary and the Elmhurst police, most often Officer Dominick Luongo. Unless noted otherwise, the facts set forth in this section of the opinion are presented in the parties' briefs in support of and in opposition to summary judgment.

#### A. Incidents Prior to 1985

The first incident took place in Plunkett Park in Elmhurst during the summer of 1982. O'Leary states that Luongo approached him and his girlfriend, remarked, "What's a nice girl like you doing with a

guy like him," and ordered them to leave the park. The parties dispute whether anyone actually reported the incident to the Elmhurst Police Department or any village official.

In May or June of 1983, Luongo issued a traffic citation between 5:00 p.m. and 6:00 p.m. to O'Leary for driving on Spring Road in Elmhurst at a speed of 48 m.p.h. when the speed limit was 25 m.p.h. With the services of a lawyer, O'Leary successfully had the charges dismissed.

Later that same summer, O'Leary screeched his tires while backing out of the driveway of a friend. Officer Decker of the Elmhurst police department approached O'Leary to admonish him for his driving. Decker asked O'Leary to produce his driver's license. O'Leary could not find the license which, as it turned out, was located in the glove compartment. Decker then proceeded to arrest O'Leary for operating a vehicle without a license. Luongo arrived on the scene, and, according to O'Leary, he began yelling profanities and threats, including: "You are nothing but an asshole and this is the end of your license." O'Leary's parents happened to be in the area. Thomas O'Leary, Sr., O'Leary's father, approached Luongo and asked him what had happened:

> I asked [Luongo] what my kid did, and he went into a song and dance out there, screaming he was an asshole and Officer Decker is an 18–year veteran and he is going to get his license ... four or five of my son's friends [were] standing [right] there.

O'Leary, Sr. and Luongo had a verbal exchange on at least one other occasion. We cannot determine from the evidence and affidavits precisely when this exchange took place. Luongo allegedly became angry when the court dismissed O'Leary's traffic citation, and he began boasting to O'Leary's friends that he would cite O'Leary for traffic violations regardless of O'Leary's guilt. These friends went to the O'Leary's home and told O'Leary, Sr. of Luongo's claims. O'Leary, Sr. and his wife went to the police station to confront Luongo with these accusations. O'Leary, Sr.

asked Luongo "What's the problem with my kid?" Luongo responded, "Your kid is an asshole and you are an asshole ... every time he gets a ticket you have him get a lawyer and go to court and he beats it." Luongo continued, "He [O'Leary] is a teenager. I'm going to get his license. I'll get him for a burned out taillight ... there is no problem getting a teenager's license. I'll get it."

O'Leary additionally alleged in his complaint, but has not substantiated with any evidence, that Luongo publicly threatened O'Leary and that Elmhurst police officers were told at a morning roll call to "get O'Leary." Finally, O'Leary claims that the Elmhurst police issued him spurious traffic citations, including for playing a loud radio and failure to have a front license plate on a vehicle registered in Indiana, which has no front license plate requirement.

### B. Incidents of April 1985 and the June 1985 Meeting

On April 12, 1985, at approximately 1:45 a.m., O'Leary and his friends were walking near a parking lot on York Road in Elmhurst. They had been jogging earlier that day. Officer Leide of the Elmhurst police was driving his squad car in the area. Upon seeing Leide, O'Leary and his friends fled in separate directions. Though they had not been involved in any misdeeds, they ran because, as O'Leary put it, they "didn't want no part of the police."

Leide radioed for assistance and pursued the youngsters. Luongo responded to the call. During this time, O'Leary had run through the parking lot and thought that the police were chasing him. He had not seen any officers specifically pursuing him, but since the officers were circling the area in general, he decided he should leave it. He ran south into a Jewel food store parking lot. Luongo saw O'Leary and began pursuing him. O'Leary called out, "Who are you?" a number of times before Luongo identified himself as a police officer. Once Luongo identified himself, O'Leary stopped running. O'Leary claims that Luongo came up to him and pushed him down, put his knee in O'Leary's back and held him to the ground. Luongo also stood

on O'Leary. O'Leary was then taken to the Elmhurst police station and charged with disorderly conduct and released on a $50 bond. O'Leary suffered stiffness for a couple of days. O'Leary's associates who were caught were also charged with disorderly conduct and released on bond.

In response to these various incidents, Elmhurst police held a meeting in June 1985 with teenagers and their parents. The parents hired an attorney to assist them in bringing grievances on behalf of their children to the attention of the police department. O'Leary alleges in his complaint that the police officers admitted "their inappropriate 'law enforcement'" and that an oral agreement was reached between the Village and those present that in return for the youths' consciously avoiding provocative or suspicious conduct, the police would refrain from inappropriate police behavior.

### C. Incidents of December 1985 and Thereafter

On December 23, 1985, however, Luongo and O'Leary were involved in another incident, the details of which the parties dispute. Early that morning, Luongo pulled O'Leary over for exceeding the speed limit. O'Leary claims that he complained that the traffic stop was unjust, reminded Luongo of their June agreement and tried to telephone his father from a mobile phone that he installed in the car as a result of his deep distrust of Elmhurst police. Luongo then forcibly removed O'Leary from the car, and Officer Revolta arrived on the scene. A scuffle ensued in which the officers forced O'Leary down into the mud, slammed his head into the police car and repeatedly kicked and punched him. The officers took him to jail where his wounds were left unattended. The officers relate a different sequence of events. They claimed that O'Leary resisted from the start, and any injury that they inflicted upon O'Leary was in self-defense and in an effort to apprehend him.

Both parties initiated court proceedings as a result of this incident. In addition to the speeding ticket, the officers filed criminal charges against O'Leary for resisting arrest and aggravated battery as to each of them. O'Leary argued unsuccessfully that he acted in self defense and was convicted on three of the four counts. The court dismissed the speeding ticket.

O'Leary's attorney initiated a grand jury investigation of the Elmhurst police department. O'Leary alleges without substantiating evidence that Elmhurst police officers lied at those proceedings and threatened potential witnesses. O'Leary's attorney sent a letter to the United States Attorney General and the Elmhurst Chief of Police complaining of Elmhurst's police practices. O'Leary's attorney claims that he has been harassed in representing his client, producing in support of this claim transcripts from a February 1986 state court proceeding in which the State's Attorney of DuPage County alluded to bringing criminal charges against the attorney for unethical and criminal conduct arising out of his efforts to dismiss the lawsuit against his client.

### D. Incidents Involving Other Individuals

O'Leary presents evidence and affidavits supporting his contention that Elmhurst police harassed other individuals. In a June 21, 1984 letter to the Editor of the *Elmhurst Press*, a mother decried the police abuse that accompanied a routine stop of her son. A newspaper article details a resisting arrest charge brought against a woman who was stopped under suspicion of drunk driving. Another article discusses the American Civil Liberties Union's complaints that the same judge who presided over O'Leary's trial was stalling the release of a known innocent individual.

O'Leary also offers the affidavit of Steven Evanoff. Evanoff states that police officer Ciochon harassed him on several occasions. On February 15, 1985, Ciochon rode his squad car near enough to Evanoff to splash water on him. Shortly thereafter, Evanoff walked by a fast food restaurant and noticed Ciochon looking at him through the window. Evanoff directed an obscene gesture at Ciochon. Ciochon ran out of the restaurant, ordered Evanoff not to move, hit him on the head with a billyclub, threw him to the ground and finally

slammed his head into the roof of the squad car. Ciochon arrested Evanoff and took him to the police station where he continued to abuse Evanoff in front of other police officers and then threw him down a flight of stairs. Evanoff was charged with resisting arrest, aggravated battery and disorderly conduct. The police dropped the disorderly conduct charge, but Evanoff was found guilty at trial of aggravated battery. Evanoff explains that he decided on advice of counsel not to file a complaint with the Elmhurst police department.

### E. O'Leary's Cause of Action

On February 11, 1986, O'Leary filed this six-count action.[1] In Count I, O'Leary charges deprivations of his right to counsel and his First Amendment rights to free association and to petition the government. In Count II, he seeks injunctive relief barring Elmhurst and Officers Luongo and Revolta from interfering in the criminal proceedings against O'Leary and from further harassment and civil rights violations of O'Leary or his attorney. Count III constitutes a pendent state law claim for battery arising out of the April 12, 1985 incident. Counts IV and V are pendent false arrest claims arising out of the incidents of April 12 and December 23, 1985. Finally, O'Leary charges a variety of civil rights violations in Count VI, including unlawful search and seizure, the infliction of cruel and unusual punishment and the denial of equal protection and due process. In their motion for summary judgment, the defendants challenge the sufficiency of the complaint and O'Leary's ability to prove some of these claims against some defendants. In addition to the claims upon which O'Leary successfully opposes summary judgment, any claims not expressly addressed in this opinion survive defendants' motion.

### Standard of Review

To prevail on summary judgment, defendants must demonstrate that there are no genuine issues of material fact and that

defendants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). As movant, defendants bear the burden of establishing that no material facts are in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). When, however, the non-movant bears the burden of persuasion at trial, it is incumbent upon that party to present some evidence from which a reasonable trier of fact could find in favor of the non-movant in order to survive a motion for summary judgment. The defendants' burden is merely to "[point] out to the District Court ... that there is an absence of evidence to support the non-moving party's case." *Id.*, 106 S.Ct. at 2554. If the evidence that the party with the burden of presentation offers in opposition to summary judgment "is merely colorable or not significantly probative summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). All inferences that can be drawn from the evidence presented are drawn in favor of O'Leary, the non-movant. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 460 (7th Cir.1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987). With these guidelines, we now address defendants' motion for summary judgment.

### Municipal Liability

Defendants contend that O'Leary cannot present any evidence from which a trier of fact could find Elmhurst liable. Municipal liability cannot attach in a § 1983 action merely on the activities of its employees. *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). A municipality can be held liable only when a policy, custom or practice of the city is the proximate cause of the plaintiff's constitutional injury. *Strauss v. Chicago*, 760 F.2d 765, 767 (7th Cir.1985). The policy must be the "moving force" behind the constitutional violation.

---

1. O'Leary's complaint is at points rambling and disorganized, with repetitious recitations of facts and vague claims. Our opinion represents our best attempt to bring some cohesiveness to the complaint, and we direct O'Leary's, and in particular his attorney's, attention to the requirements of Fed.R.Civ.P. §§ 8(a) and 10(b).

*Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981). Inaction or acquiescence by the city with knowledge of unconstitutional practices by its employees may support municipal liability when there exists an "extremely high level of culpability." *Lenard v. Argento,* 699 F.2d 874, 885 (7th Cir.), *cert. denied,* 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983). However, isolated acts by those employees are insufficient. *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 2436, 85 L.Ed. 2d 791 (1985). To survive summary judgment, O'Leary must present some evidence from which a trier of fact can reasonably infer a policy or custom by Elmhurst or acquiescence in Luongo's and Revolta's acts.

■ O'Leary has alleged that village officials knew of certain incidents of harassment but failed to address them. O'Leary also alleges that the police officers were instructed at a morning roll call to "get O'Leary." O'Leary has not, however, presented any evidence to support these allegations.[2] O'Leary cannot rely on Evanoff's claims of harassment, for he admits that he never filed any complaints with Elmhurst or its police department, thus belying any claim that Elmhurst knew of officers harassing Evanoff but acquiesced in it.

It is clear, however, that Elmhurst was aware of claims of harassment during and after the June 1985 meeting attended by parents, teenagers and Elmhurst police officials. Citizens aired their complaints against the officers, and the officials agreed to respect the teenagers' constitutional rights. There is no evidence, however, that any city officials admitted a policy of harassment. Any police behavior that allegedly occurred prior to the meeting does not automatically translate into a village policy. Further, Elmhurst took affirmative action in response to the complaint, demonstrating that it did not acquiesce in the alleged acts of harassment.

Elmhurst officers stated their intention to avoid any future constitutional violations and, as O'Leary alleges in his complaint, acted consistent with that promise:

> with the exception stated above there was full and complete compliance with the agreement by all. It is believed and therefore alleged that most of the individuals employed by the Village of Elmhurst as police officers still intend to comply with the agreement stated aforesaid—Luongo and Revolta are notable exceptions.

In sum, O'Leary has presented no evidence that Elmhurst was aware prior to the June 1985 meeting that its police officers violated constitutional rights or that Elmhurst, when it did become aware, condoned those actions by failing to act. O'Leary's allegations, and the evidence presented, demonstrates that Elmhurst did act to stop the activities and did so rather effectively. Luongo's and Revolta's failure to comply with the agreement does not translate into an Elmhurst policy to not comply. Accordingly, defendants' motion for summary judgment as to the Village of Elmhurst is granted.

### Counts I and VI: Right to Association Claims

O'Leary charges in two separate but factually similar parts of the complaint that defendants denied his right of free association "with friends, neighbors and his legal counsel by threats, intimidation and threats of prosecution and/or persecution of said persons as a penalty for the association," Complaint, ¶ 50(c), and with his peers as potential witnesses. *Id.* ¶¶ 30, 31. These allegations additionally suggest unlawful interference with his defense during the state criminal proceedings, but he frames the charges in a First Amendment context, and we treat them only as such. Defendants contend that the associations at issue are not the kind of intimate relationships

---

2. O'Leary claims that defendants unlawfully denied him access to the minutes of the roll call during discovery. We have already denied O'Leary's motions to compel and for sanctions in which he made identical claims. Discovery has closed. Accordingly, for purposes of this motion for summary judgment, O'Leary cannot rely on evidence that he cannot now present to the Court.

protected by the First Amendment and, in any event, O'Leary can present no evidence to support his claims. We reject the first contention but grant summary judgment as to these claims based on the second.

■■■ The Supreme Court has not set clear boundaries on the right to free association. *Rotary International v. Rotary Club of Duarte*, 481 U.S. 537, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987). The Court has, however, indicated that First Amendment protections extend beyond family relationships. *Id.* 107 S.Ct. at 1946. In *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), the Court, in holding that members of the Jaycees are not entitled to the associational protections of the First Amendment, stated that relationships that are similar to those of the family, that is, relatively small and selective, are "likely" to be protected, whereas relationships within a "large business enterprise" lacking that intimate element are not.

Determining the limits of state authority over an individual's freedom to enter into a particular association therefore unavoidably entails a careful assessment of where that relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments. *Id.*, 104 S.Ct. at 3251.

O'Leary's relationship with his neighbors and friends might very well be the kind of relationship protected by the First Amendment. Such a decision hinges on factual findings as to the intimacy of the relationships.[3] O'Leary has, however, failed to point to any evidence in the record from which a trier of fact could reasonably conclude that O'Leary's relationship with the individuals rises to the level of intimacy necessary to warrant First Amendment protection. At most, O'Leary refers to the individuals as his friends and neighbors. On that basis, summary judgment as to his First Amendment claims is granted.[4]

### Count II: Injunctive Relief

O'Leary seeks a permanent injunction (1) prohibiting Luongo and other Elmhurst police officers from discussing, investigating or prosecuting the resisting arrest and aggravated battery charges brought against O'Leary and (2) prohibiting the defendant police officers from issuing unwarranted traffic citations, interfering with O'Leary's use of his car, harassing his attorney and destroying documents related to this case. Defendants argue in their motion for summary judgment that O'Leary cannot prevail in his claim for injunctive relief because the state criminal proceedings have already been completed and O'Leary cannot establish a "real and immediate threat" that the officers will engage in the activities sought to be enjoined.

### A. Enjoining Activities Involving the State Criminal Proceedings

As the facts make clear, O'Leary has already been convicted on three of the criminal charges brought in state court and acquitted of the other. Accordingly, O'Leary's request for an order prohibiting investigation for or the prosecution of that case is moot, and summary judgment is granted as to that claim.

### B. Enjoining Further Harassing Acts

The United States Supreme Court held in *Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), that an

---

**3.** Defendants cite only one case in support of their contention that the First Amendment does not protect "mere friendship or personal affinity." *Gay Student Services v. Texas A & M University*, 737 F.2d 1317, 1326 (5th Cir.), *cert. denied*, 471 U.S. 1001, 105 S.Ct. 1860, 85 L.Ed.2d 155 (1984). The Court there expressly decided not to address that issue and reversed the district court's decision on other grounds.

**4.** As to his relationship with his attorney, O'Leary has not presented any legal support nor, for that matter, any argument whatsoever that the attorney-client relationship in the context of criminal proceedings is protected by the First Amendment. Certainly, the First Amendment protects the right of individuals to associate for purposes of obtaining vigorous advocacy in defense of constitutional rights. *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 336, 9 L.Ed.2d 405 (1963). However, O'Leary has not supported his implicit proposition of law that the relationship between an attorney and client, certainly subsumed under Sixth Amendment rights, additionally invokes First Amendment protections.

individual does not have standing to seek an injunction ordering police to refrain from certain practices unless the plaintiff can demonstrate a "real and immediate" threat that the officers will engage in the unlawful conduct in the future. *Williams v. Chicago*, 609 F.Supp. 1017, 1018 (N.D.Ill. 1985). The threat cannot be merely "conjectural" or "hypothetical." *Lyons*, 103 S.Ct. at 1665. The Court in *Lyons* dismissed an action seeking to enjoin the use of chokeholds by Los Angeles police officers when plaintiff failed to allege any facts from which a trier of fact could conclude that there was a real possibility that a chokehold would be used against him again. Lyons' unsubstantiated fear of future chokeholds was insufficient. *Id.*, 103 S.Ct. at 1668 n. 8.

### 1. Officer Luongo

■ O'Leary has presented evidence from which a reasonable trier of fact could conclude that there exists a real and immediate threat that Luongo will harass him in the future. O'Leary through affidavit and otherwise has detailed numerous threats by Luongo that are factually disputed. The interaction between Luongo and O'Leary has developed to the point that O'Leary claims he flees on the sight of police. Whether the activities by Luongo constitute a campaign of harassment is a question of fact. *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.1982) ("[A]n entire campaign of harassment which though trivial in detail may have been substantial in gross. It is a question of fact ...."). Whether there is a real threat that the campaign will continue is also a question of fact. Accordingly, O'Leary has created a genuine fact issue as to his claim for an injunction against Luongo.

Defendants cite two cases to support their contention that O'Leary has not presented sufficient evidence to take this issue to the trier of fact. Both cases are reconcilable with our decision. In *Lee v. Severin*, No. 85 C 3753 (N.D.Ill. Oct. 4, 1985) [available on WESTLAW, 1985 WL 3009], the court dismissed a claim against various police officers because the plaintiff failed to allege sufficient facts to support a claim of harassment. The court did not discuss the level of harassment required to justify a finding of a real and immediate threat of future harassment. Similarly, in *Stacey v. Ford*, 554 F.Supp. 8 (N.D.Ga. 1982), the court did not address a prayer for injunctive relief but dismissed a claim of verbal abuse because the plaintiff alleged no legally cognizable injury. We believe O'Leary's evidence here could support a finding of harassment sufficient to warrant a finding that O'Leary faces a real and immediate threat of future harassment by Luongo.

### 2. Officer Revolta

■ Unlike O'Leary's evidence in reference to Luongo, there is insufficient evidence to support a claim that Officer Revolta mounted a campaign of harassment against O'Leary, and there is a real and immediate threat that the campaign will continue. Like the plaintiff in *Lyons*, O'Leary can point to only one encounter with Revolta, the December 1985 arrest and admits in deposition that Revolta intimidated him only in that one instance. As a matter of law, Revolta has not engaged in a pattern of harassment towards O'Leary that justifies any finding of a real and immediate threat essential to support a prayer for injunctive relief. Accordingly, we grant summary judgment in favor of Revolta as to Count II.

### Count VI: The Equal Protection Claims

O'Leary brings two equal protection claims—selective prosecution and discrimination on the basis of youth [5]—and defend-

---

5. The complaint reads
 a) denied equal protection of the law, in that he was singled out for selective persecution by Luongo, Revolta and other defendants. These officers waited for the plaintiff to be alone in his vehicle and under color of their positions as police officers and public officials, filed criminal complaints against the plaintiff well knowing the same were false and untrue.
 b) denied the plaintiff equal protection of the law in that plaintiff was singled out for discrimination because of his young age. His privacy was invaded by police officers in police vehicles spying on his, stopping him for

ants direct their motion for summary judgment only to the former, contending a claim of selective prosecution of one individual is insufficient to state an equal protection claim. In *Bohen v. East Chicago,* 799 F.2d 1180, 1186–87 (7th Cir.1986), the Seventh Circuit set forth the requirements of an equal protection claim:

> The core of any equal protection case is, of course, a showing of intentional discrimination. As a general matter, a single discriminatory act against one individual can amount to intentional discrimination for equal protection purposes. An equal protection plaintiff therefore need not prove a discriminatory policy against an entire class; discrimination against the plaintiff because of her membership in the class is by itself enough. (Citations omitted).

It is true that O'Leary has not expressly matched his selective prosecution claim with a specific class of individuals. However, we do not read the complaint or the evidence presented in opposition to summary judgment so narrowly as to justify summary judgment on these claims. "We review the record and the reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Box v. A & P Tea Co.,* 772 F.2d 1372, 1375 (7th Cir.1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986). O'Leary's claim of selective prosecution and youth discrimination arise from the same facts and police behavior. We view that discrimination charge as integrally linked to the selective prosecution charge and accordingly will not dismiss the latter on the mere grounds that there is no alleged class separate and distinct from the class inherent in the former. Summary judgment as to the equal protection claims is denied.

### Count VI: Federal Claims of False Arrest

 Defendants contend that the undisputed facts demonstrate that they had probable cause to arrest O'Leary on April 12 and December 23, 1985. Probable cause is an absolute defense against a false arrest claim. *Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1344 n. 10 (7th Cir.1985). The court may determine whether probable cause existed when the facts are undisputed. *Llaguno v. Mingey,* 763 F.2d 1560, 1565 (7th Cir.1985). Probable cause arises "at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [was] sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). An officer need not personally witness the incident and can rely on another officer's direction. *Karr v. Smith,* 774 F.2d 1029, 1031–32 (10th Cir.1985). A reliable informant can give probable cause to an officer, and the arrest is legal as a matter of law even if the suspect turns out to be innocent of any crime. *Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 200 (7th Cir.1985); *McKinney v. George,* 726 F.2d 1183, 1187 (7th Cir.1984).

 As to the April 12 incident, it is undisputed that O'Leary and his friends fled when they saw Officer Leide in his squad car and that Leide pursued the youngsters, and Luongo responded to Leide's call for assistance. Probable cause for Luongo arose when Leide, a reliable informant as a matter of law in the absence of any evidence otherwise, radioed him for assistance. Accordingly, summary judgment as to the federal claim of false arrest on April 12, 1985 is granted.

 As to the December 23 incident, we grant summary judgment on the grounds that O'Leary's state court conviction for crimes, including aggravated battery, arising out of the December 23 incident bars O'Leary under principles of res judicata from maintaining a claim that Luongo, *the knowing victim* of the aggravated battery, did not have probable cause to arrest him. *Guenther v. Holmgreen,* 738 F.2d 879, 884

---

spurious and/or imagined traffic offenses, misdemeanors and felonies which the plaintiff did not commit.

(7th Cir.1984), *cert. denied,* 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985).

### Count VI: Unlawful Stop

■ We are not convinced that the state trial court's suggestion during the state court proceedings that it believed the traffic stop was legitimate constitutes a bar to O'Leary's claim that the traffic stop was unlawful. The trial court did not indicate, and defendants have not demonstrated "with clarity and certainty," that the issue of whether the officers had probable cause to stop O'Leary was actually litigated before and necessarily decided by the state court. *Jones v. Alton,* 757 F.2d 878, 885 (7th Cir.1985); *Hornung v. Park Forest,* 634 F.Supp. 540, 543 (N.D.Ill.1986). There is no real discussion in the transcript of the issue of probable cause. Accordingly, we deny summary judgment as to O'Leary's claim of unlawful seizure.

### Count VI: Federal Claims of Excessive Force

O'Leary charges Officer Luongo with using excessive force during the April 12 and the December 23 arrests. Defendants contend that they are entitled to summary judgment as to the claim arising out of the December 23 arrest because O'Leary's conviction for resisting arrest bars an excessive force claim and because O'Leary cannot present sufficient evidence from which a trier of fact could find that Luongo used excessive force. We deny summary judgment as to both excessive force claims.

#### A. Res Judicata

■ O'Leary's conviction for resisting arrest does not bar an excessive force claim arising out of the arrest. *Williams v. Liberty,* 461 F.2d 325, 327 (7th Cir.1972).

That O'Leary was unsuccessful in his defense of self-defense does not bar a finding in a later § 1983 action that the officers nevertheless used excessive force in arresting him. *Hernandez v. Los Angeles,* 624 F.2d 935, 937–38 (9th Cir.1980); *Clark v. Illinois,* 415 F.Supp. 149, 154–56 (N.D.Ill. 1976). Application of res judicata here is especially inappropriate. The trial transcript makes clear that the state court made no findings as to the amount of force used in making the arrest but instead limited its inquiry to the injuries that O'Leary sustained. Indeed, the court expressly disallowed as irrelevant any testimonial evidence as to the amount of force Luongo used.[6] Thus, O'Leary was not given an opportunity to fully litigate the issue, and a bar on grounds of collateral estoppel is accordingly unwarranted. *Illinois State Chamber of Commerce v. Pollution Control Bd.,* 78 Ill.2d 1, 34 Ill.Dec. 334, 337, 398 N.E.2d 9, 12 (1979).[7]

#### B. Evidence Supporting a Finding of Excessive Force

■ In their contention that O'Leary cannot demonstrate sufficiently severe injuries to support an excessive force claim under the Fourteenth Amendment, defendants rely primarily on the Seventh Circuit decision in *Gumz v. Morrissette,* 772 F.2d 1395 (7th Cir.1985), *cert. denied,* 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189, in which the court held that a plaintiff must prove that the force used by the officer "1) caused severe injuries, 2) was grossly disproportionate to the need for action under the circumstances, and 3) was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience." *Id.* at 1400.

---

**6.** When Ditkowski, O'Leary's attorney, attempted to cross-examine Luongo on the force used during the arrest, the state trial court judge stated:

Mr. Ditkowski, I am aware of the fact that you have a civil rights claim pending in the United States District Court. And you have been all along, since I have had the case, trying to try the civil rights action in this criminal case. I think you are doing it now, and I think you are running the risk, perhaps, of not focusing your attention where it should be in this case, and that is, in the defense of

your client's criminal case, not the civil case for damages for violation of his civil rights. Just an observation and a warning to you ... that line of inquiry may be pertinent in the District Court in the civil rights case, but has nothing to do with the issue in this case.

**7.** In determining the application of issue preclusion, we apply the law of the state in which the decision upon which preclusion rests was rendered. *Migra v. Warren City School District,* 465 U.S. 75, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984).

**904**

In *Lester v. Chicago*, 830 F.2d 706 (7th Cir.1987), the Seventh Circuit overruled *Gumz* and held that the appropriate standard for determining excessive force under both the Fourth and Fourteenth Amendments is whether the force used was "unreasonable under the circumstances:"

> If, under the totality of the circumstances, a police officer unreasonably seizes a person by using excessive force, he has violated that person's Fourth Amendment rights.... *Gumz* is incompatible with a Fourth Amendment objective reasonableness analysis ... [t]here should be no occasion [to apply *Gumz*] to an excessive force in arrest claim. *Id.* at 712–13.

O'Leary has presented sufficient evidence, disputed by defendants, from which a trier of fact can find Luongo's use of force on April 12 and December 23 unreasonable in the "totality of the circumstances." Accordingly, summary judgment as to either excessive force claim is denied.

### Counts III, IV and V: The Pendent State Claims

Since O'Leary's excessive force claims arising out of the April 12 and December 23 incidents survive summary judgment, we elect to continue to exercise our pendent jurisdiction over O'Leary's state law claims for battery and false arrest. Accordingly, summary judgment as to Counts III, IV and V is denied.

### Prayer for Punitive Damages

Finally, defendants move for summary judgment as to O'Leary's prayer for punitive damages against Elmhurst[8] and the individual defendants. Punitive damages are available against government officials who are sued in their individual capacity, but not individuals sued in their official capacity. *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983); *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 870 (7th Cir.1983). When the complaint does not specify or the activities of the parties throughout the litigation do not indicate, the capacity under which an individual is sued, we presume official capacity and accordingly deny punitive relief. *Kolar v. County of Sangamon*, 756 F.2d 564, 568–69 (7th Cir.1985). In the first paragraph of his complaint, O'Leary states that "[t]he individuals are sued herein in their individual capacities and as agents of the Village of Elmhurst." Therefore, punitive relief against them is available.

### Conclusion

The motion for summary judgment is granted in favor of the defendants as to the First Amendment claims, the Village of Elmhurst on all counts, the prayer for injunctive relief against Officer Revolta and the federal claims of false arrest. The motion is denied as to the prayer for injunctive relief against Officer Luongo, the equal protection claims, the claim of unlawful stop, the excessive force claims, the state law claims and the prayer for punitive relief from the individual defendants. O'Leary's motion to strike defendants' motion for summary judgment is denied.[9] It is so ordered.

---

8. Punitive damages are unavailable in a § 1983 action against a municipality, *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), and in any event, we have granted summary judgment as to Elmhurst on all counts.

9. O'Leary's motion to strike alleges defendants' failure to comply with discovery requests. Defendants have done both.