Mary BANKS, Plaintiff,

v.

CHICAGO HOUSING AUTHORITY,
Police Officers Harris, Lewis,
& Wolf, Defendants.

No. 96 C 1236.

United States District Court,
N.D. Illinois,
Eastern Division.

July 30, 1998.

Standish E. Willis, Chicago, IL, Michael William Condon, Hervas, Sotos & Condon, Itasca, IL, for plaintiff.

Mary A. Banks, Chicago, IL, pro se.

David Keith Hill and Angela Wealthy Richardson, Chicago Housing Authority, Chicago, IL, for Chicago Housing Authority, Janice Jeffries, Officer Ward, Officer Hill, Officer Clark.

David Keith Hill and Angela Wealthy Richardson, Kathleen Wengel, Chicago Housing Authority, Chicago, IL, for Larry Harris, Officer Ward, Lt. Wolf.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Mary Banks, formerly employed as a crossing guard by the Chicago Police Department, has filed a second amended complaint against the Chicago Housing Authority ("CHA") and four of its police officers (collectively "defendants"). Plaintiff asserts claims under 42 U.S.C. § 1983, alleging that defendants violated her civil rights by: (1) using excessive force; (2) failing to prevent a civil rights violation; and (3) failing to provide medical assistance. Defendants have moved for summary judgment on all three of plaintiff's claims.[1] For the reasons set forth below, defendants' motion for summary judgment is denied.

### FACTS

The following facts are undisputed except where otherwise noted. On March 4, 1994, plaintiff Mary Banks was at work in her capacity as a crossing guard for the Chicago Police Department. According to plaintiff, around 9:00 a.m., a "reckless driver" passed through the intersection where plaintiff was working. Plaintiff contends that she left her assigned post at 35th Street and Cottage Grove Avenue in order to pursue this reck-

less driver so that she could record the vehicle's license plate number. Plaintiff got into her van and began pursuing the vehicle when, shortly thereafter, she was pulled over by CHA police officers Larry Harris and Janice Jeffries.

Plaintiff claims that from the outset, she was verbally and physically abused by the CHA police officers. Plaintiff alleges that Officers Harris and Jeffries both used profane and abusive language with her, and that they never identified themselves as CHA police officers. Plaintiff contends that Officer Harris searched her and her belongings without probable cause, struck her with a closed fist, choked her with his forearm, and grabbed her by her hair braids and threw her against his squad car. She claims he never informed her of her rights or that she was under arrest. Plaintiff further alleges that, soon after she was pulled over, Officer Ward arrived on the scene, and that he also physically and verbally abused her. Plaintiff claims Officer Ward struck her without warning, and that he and Officer Harris then pressed her against the police vehicle with "great force," and then again grabbed her by her hair braids and pushed her hard into the vehicle. Plaintiff contends the officers swore at her and denigrated her in public. Plaintiff was eventually taken to the Chicago Housing Authority Police Station on East 38th Street.

Plaintiff next contends that she was interrogated by Lieutenant Wolf at the station, but was not informed of her Miranda rights. Plaintiff claims that she repeatedly informed the officers that she was in pain and wanted to be taken to the hospital, but that her requests were denied. At approximately 1:30 p.m., over four hours after the entire incident began, plaintiff was transported to Mercy Hospital. Plaintiff contends that Officer Ward and another officer continued to verbally abuse and "humiliate" plaintiff on the way to the hospital. The hospital report notes that plaintiff had multiple contusions. After being released, plaintiff was taken to the Chicago Police Department and placed under arrest. Plaintiff was charged with

---

1. Defendants have also moved to strike plaintiff's statement of additional material facts, numbers 43 through 76. Defendants argue these additional facts should be struck because they are not germane to defendants' summary judgment motion. Plaintiff's additional facts are directly related to her complaint. The motion is, therefore, denied.

speeding, resisting arrest, impersonating a police officer, and battering a police officer.

Defendants deny plaintiff's version of events. They contend that they pulled plaintiff over for speeding through a red light and for suspicion of possibly driving a stolen vehicle. Defendants claim that plaintiff knowingly and falsely represented herself as a Chicago Police Officer. Officer Harris and Officer Jeffries claim that when Officer Harris attempted to arrest plaintiff, she resisted arrest and became quite violent. Defendants contend that they used only the force necessary to restrain plaintiff, and were merely responding to her resisting arrest. Defendants deny that they ever verbally abused plaintiff, or that they failed to identify themselves as police officers, or that they failed to Mirandize plaintiff.

On July 31, 1995, the Superintendent of Chicago Police filed charges against plaintiff with the Police Board of the City of Chicago ("the Police Board"). Plaintiff was charged with the following Chicago Police Department violations: (1) violation of a law or ordinance; (2) an action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department; (3) disobedience of an order or directive, whether written or oral; (4) disrespect to or maltreatment of a person, while on or off duty; and (5) engaging in an unjustified verbal or physical altercation with a person, while on or off duty. The Police Superintendent recommended that plaintiff be discharged from her position as a crossing guard with the Chicago Police Department.

Over the next five months, the Police Board proceedings were delayed many times as plaintiff sought and was granted numerous continuances. Although she was aware of the impending proceedings, plaintiff did not retain counsel, appear at status hearings, or conduct discovery. On January 11, 1996, after over five months of continuances, plaintiff was given notice that her Board hearing was definitively set for March 29, 1996, at which time it was held in her absence. After hearing the Chicago Police Department's evidence and witnesses, the Police Board issued a final decision, setting forth its factual and legal conclusions.

The Police Board determined that plaintiff was guilty of all the charges against her and specifically found that she: (1) falsely identified herself as a Chicago Police Officer to CHA Police Officers; (2) struck and pushed CHA Police Officers; (3) resisted arrest by CHA Police Officers; and (4) failed to stop at a red traffic light. Thus, the Police Board found that plaintiff violated Chicago Police Department Rules and both Illinois and Chicago municipal law. The Board also determined that plaintiff disobeyed a Police Department order when she did not appear at the Internal Affairs Division for a scheduled appointment. Based on these charges, the Superintendent recommended that plaintiff be discharged.

On October 28, 1997, plaintiff filed her second amended complaint alleging civil rights violations as described above.

### *DISCUSSION*

#### I. *Legal Standard*

Under Fed.R.Civ.P. 56(c), a court should grant summary judgment if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of a genuine issue of material fact. *See Id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). When reviewing a summary judgment motion, the court must construe the facts in a light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

#### II. *Collateral Estoppel*

Defendants contend that they are entitled to summary judgment because plaintiff's action is barred by collateral estoppel. Specifically, defendants assert that plaintiff should be collaterally estopped from contesting the factual findings and legal conclusions made by the Police Board in its disciplinary hear-

ing against plaintiff. Because the Police Board found that plaintiff resisted arrest, struck and pushed CHA police officers, and wrongly identified herself as a Chicago Police Officer, defendants claim she cannot succeed on her § 1983 claims.

■ To determine whether this court can give any preclusive effect to the Police Board's decision, it must first determine whether the Police Board acted in a judicial capacity. *Wilson v. City of Chicago,* 900 F.Supp. 1015, 1024 (N.D.Ill.1995), *aff'd* 120 F.3d 681 (7th Cir.1997). In *Univ. of Tennessee v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the Supreme Court stated: "When a State agency acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the state's courts."

■ The Police Board clearly acted in a judicial capacity. Administrative agencies act in such capacity and their determinations are entitled to preclusive effect when the procedures entail the essential elements of an adjudication. *Wilson,* 900 F.Supp. at 1024. Those elements include: (1) adequate notice; (2) a right to present evidence on one's own behalf, and to rebut evidence presented by the opposition; (3) a formulation of issues of law and fact; (4) a final decision; and (5) the procedural elements to determine conclusively the issues in question. *See Wilson,* 900 F.Supp. at 1024; *Crot v. Byrne,* 646 F.Supp. 1245, 1255 (N.D.Ill.1986), *aff'd* 957 F.2d 394 (7th Cir.1992).

All of these factors have been met in the instant case. Plaintiff was given almost three months notice of the Board hearing. Plaintiff had every opportunity to retain counsel, conduct discovery, and present evi-

dence to the Board. The Police Board issued findings setting forth its factual and legal conclusions. The decision of the Board completed all administrative action, and is conclusive absent a timely suit for judicial review. This court already decided in *Wilson,* referring to a Police Board hearing, that "these procedures clearly constitute an administrative adjudication." *Wilson,* 900 F.Supp. at 1024.

■ Once it has been established an agency acted in a judicial capacity, four conditions still must be established for a particular decision to be given preclusive effect: (1) a final decision on the merits must have been reached; (2) the issues on which estoppel is sought were essential to the decision; (3) the party against whom estoppel is invoked had a full opportunity to address the issues in the case; and (4) the issues decided are identical to the issues on which estoppel is sought. *Ray v. Indiana & Michigan Elec. Co.,* 758 F.2d 1148, 1150 (7th Cir.1985).

Of these four conditions, the first and third conditions appear to have been met in the instant case.[2] However, the second and fourth conditions have not been met.

■ The Board hearing focused on plaintiff's behavior and her alleged violation of Chicago Police Department rules and Illinois law. The Board determined that plaintiff struck and pushed the defendant officers. Yet, the issues defendants seek to preclude plaintiff from litigating relate to their conduct towards plaintiff, not plaintiff's behavior toward them. Accordingly, the issues on which estoppel is sought by defendants were not essential to the Board's decision, and are not identical to the issues decided by the Board.

Defendants argue that the issues that were before the Board go to the essence of plaintiff's excessive force claim. Defendants con-

---

**2.** The parties dispute whether plaintiff had a full opportunity to address the issues in the case. While plaintiff does not dispute that she had notice of the Police Board hearing, she contends that she suffers from Post Traumatic Stress Disorder, and that this condition was a mental disability that prevented her from attending the hearing. Defendants point out that plaintiff's recorded reasons for not attending any of the Police Board proceedings failed to mention this condition, and that her alleged condition did not prevent plaintiff from initially prosecuting this case pro se. Because the court finds that not all the conditions for preclusion have been met, it need not resolve at this time whether plaintiff's alleged disorder denied her the opportunity to attend the Police Board proceedings and address the issues presented.

tend that the Board's findings that plaintiff used "unjustified" force shows that she was the aggressor in the altercation, thereby precluding a claim of excessive force against the officers. In their reply brief (which does not conform to Local General Rule 9(B)), defendants argue that "one cannot maintain that an officer acted excessively, if the arrestee exercised more force than the officer used."

■ Defendants' argument is flawed. It is well-settled that a lawful arrest can be accompanied by excessive force. *See Williams v. Liberty,* 461 F.2d 325, 327 (7th Cir.1972) *(citing Monroe v. Pape* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)), *overruled on other grounds by Monell v. Dep't of Social Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Accordingly, a conviction for resisting arrest does not bar a plaintiff from filing an excessive force claim arising out of that arrest. *See, e.g., Williams,* 461 F.2d at 327 ("Guilty verdict on the criminal charge of resisting arrest is not 'necessarily' conclusive as to plaintiff's present claim of excessive force used by the police officers"); *Bemben v. Hunt,* 1995 WL 27223, at *3 (N.D.Ill. Jan.23, 1995) ("Plaintiff properly notes that a conviction for resisting arrest is not conclusive with respect to Plaintiff's allegations of excessive force"); *O'Leary v. Luongo,* 692 F.Supp. 893, 903 (N.D.Ill.1988) ("Application of res judicata here is especially inappropriate" where "trial transcript [from plaintiff's conviction in state court for resisting arrest and battery against the police] makes clear that the state court made no finding as to the amount of force used in making the arrest but instead limited its inquiry to the injuries O'Leary sustained"); *Perri v. Daggy,* 776 F.Supp. 1345, 1347 (N.D.Ind.1991) ("The defendants may be found to have used excessive force even if [plaintiff] engaged in disorderly conduct and/or resisting law enforcement. An arrestee's commission of a crime does not justify the use of force without limit"). In the instant case, the Police Board made no finding as to the amount of force that the CHA officers used in arresting plaintiff. Instead,

the Board focused on plaintiff's activity. Therefore, the court finds that plaintiff is not precluded from bringing her § 1983 claims for excessive force and failure to prevent a civil rights violation.[3]

### III. Plaintiff's Failure to Provide Medical Assistance Claim

Defendants also argue that plaintiff is precluded from bringing a failure to provide medical assistance claim under § 1983 because such a claim must be based on an underlying constitutional violation. *See Wolf–Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983) ("An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation"). Defendants contend that since collateral estoppel bars plaintiff's claims of excessive force and failure to prevent a civil rights violation, she cannot sustain a § 1983 claim based on the failure to provide medical assistance.

Defendants are wrong for several reasons. First, a jury may find an underlying constitutional violation on either of plaintiff's other two claims, which the court has found are not barred. Second, if a special relationship exists between the victim and the state, a § 1983 action for failure to provide medical assistance can be maintained. *See Janan v. Trammell,* 785 F.2d 557, 560 (6th Cir.1986); *Ellsworth v. City of Racine,* 774 F.2d 182, 185 (7th Cir.1985).

■ Defendants cite *Tucker v. Callahan,* 867 F.2d 909 (6th Cir.1989), seemingly in an attempt to show that no special relationship existed between plaintiff and defendants. *Tucker,* however, is inapposite to this case. The court in *Tucker* found that the failure to provide medical assistance was not actionable because the state actor did not cause the injury to plaintiff. In the instant case, plaintiff claims that defendants caused her injuries. Whether defendants used an appropriate amount of force is disputed. A special relationship can also exist when police have a person in custody. In *Gregory v. City of Rogers,* 974 F.2d 1006, 1010 (8th Cir.1992)

---

**3.** Although the Police Board findings do not preclude plaintiff's § 1983 claims of excessive force and failure to prevent a civil rights violation, were the court to find that plaintiff had a full and fair opportunity to attend the Police Board hearing, the jury would be instructed to regard the Police Board findings regarding plaintiff's conduct as true.

(en banc), the court held that "the Due Process Clause imposes a duty on state actors to protect or care for citizens in two situations: first, in custodial and other settings in which the state has limited the individuals' ability to care for themselves; and second when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." The guiding principle of *Gregory* and numerous other due process cases is that, "when a state takes custody of a person, 'the Constitution imposes upon it a corresponding duty' for his protection." *Reed v. Gardner*, 986 F.2d 1122 (7th Cir.1993) (citing *DeShaney v. Winnebago County Dep't of Social Serv.*, 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)).

It is clear that plaintiff was in custody of the defendants while she was at the CHA police station. Whether plaintiff informed defendants that she was in pain and required medical assistance is disputed. Accordingly, summary judgment on plaintiff's failure to provide medical assistance claim is inappropriate.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is denied. Defendants' motion to strike plaintiff's statement of additional material facts, numbers 43 through 76, is also denied.