Daniel **ESCAMILLA**, Sandra Escamilla, Cynthia Escamilla, Nedra Escamilla, Jessica Ramirez, Benjamin Galindo, and Daniel Escamilla, Plaintiffs-Appellants,

v.

**CITY OF SANTA ANA,** Raymond C. Davis, John Doe Garcia, R. Huerth, Jesus Jimenez, La Posada Mexican Restaurant, Jakob Mueller, and Irmengard Mueller, Defendants-Appellees.

No. 85–5648.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1986.

Decided July 31, 1986.

Meri J. Westreich, Santa Ana, Cal., for plaintiffs-appellants.

Gayle K. Tonan, Kinkle, Rodiger & Spriggs, Santa Ana, Cal., for defendants-appellees.

Before SCHROEDER and HALL, Circuit Judges, and HARDY,* District Judge.

SCHROEDER, Circuit Judge.

Plaintiffs-Appellants are the children of decedent Mary Medina. They appeal the district court order, 606 F.Supp. 928 (1985), granting the defendants' motion for summary judgment in appellants' section 1983 action against the City of Santa Ana, the Chief of Police, and two undercover officers. Medina was the innocent victim of a barroom shooting, and appellants claim that the undercover officers who happened to be present at the scene should have taken direct action to prevent the shooting. Because we conclude that the police offi-

cers in the circumstances of this case did not deprive Medina of life without due process of law, we affirm.

## FACTS

The material facts are substantially undisputed. On March 28, 1980, Ronald Huerth and Jesus Garcia, undercover officers for the City of Santa Ana, were at the La Posada Restaurant to inspect for liquor law violations. During the course of the evening, the officers observed a fight brewing between Jesse Castellanos and Jesus Jimenez. The officers knew that Castellanos had a criminal record, and they saw a gun protruding from his pocket. During the course of the argument, the officers heard Jimenez tell his friend, Freddie Ruiz, to get a gun.

The senior officer, Officer Huerth, instructed Officer Garcia to leave the bar, and to radio from their car for uniformed backup assistance. Officer Garcia did so. A few moments later, at the front of the bar, a fight broke out, apparently between Jimenez and Castellanos. Shots were fired and bottles were thrown, but no one was injured at this point. Almost instantaneously, a second altercation erupted at the back of the bar. As Officer Huerth proceeded toward this portion of the bar, a second volley of shots rang out from the front portion of the bar where the first fight had occurred. During this second round of gunfire, a stray bullet from Jimenez' gun killed plaintiffs' decedent, Mary Medina, a bystander who was not involved in the fight.

The children of Mary Medina filed this action under 42 U.S.C. § 1983 against the two officers, the Chief of Police, and the City of Santa Ana, alleging that the officers' failure to apprehend Jimenez before he killed Medina violated her due process rights under the fourteenth amendment. The district court granted the defendants' motion for summary judgment. The district court concluded that the officers did

---

* Honorable Charles L. Hardy, United States District Court Judge for the District of Arizona, sitting by designation.

not have a constitutional duty to intervene more quickly than they did in order to protect Medina, a member of the general public.

We review *de novo* the district court's decision to grant summary judgment. *Allen v. A.H. Robins Co.*, 752 F.2d 1365, 1368 (9th Cir.1985). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.;* Fed.R.Civ.P. 56(c).

## DISCUSSION

Section 1983 provides in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Here, appellants claim that the officers subjected their mother to a deprivation of her life without due process of law by failing to intervene to prevent her death.

There is no question that if the undercover officers had stopped Jimenez before he acquired the gun or before the fight began, Medina would not have died. However, for purposes of a section 1983 due process claim, the analysis of whether the officers deprived Medina of life without due process must begin, rather than end, at this point.

Contrary to the thrust of appellants' position in this case, it is not enough that police officers might in some sense be said to have caused an injury. There must be a deprivation of rights secured by the Constitution or other federal law by an officer acting under color of state law. 42 U.S.C. § 1983; *see Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979).

This case is not like those cases in which a police officer's use of direct force has been held actionable under section 1983 because the conduct " 'shocks the conscience' or constitutes force that is 'brutal' and offends 'even hardened sensibilities.' " *Rutherford v. City of Berkeley*, 780 F.2d 1444, 1446 (9th Cir.1986) (quoting *Rochin v. California*, 342 U.S. 165, 172–73, 72 S.Ct. 205, 209–10, 96 L.Ed. 183 (1952)); *see also Gaut v. Sunn*, 792 F.2d 874 (9th Cir. 1986). We have characterized such conduct as substantive violations of due process. As we recently observed, "violations that give rise to a substantive due process claim are necessarily more egregious than those that give rise to simple tort actions." *Rutherford*, 780 F.2d at 1446 (citing *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

Similarly, a section 1983 action may be maintained when the plaintiff alleges violation of a specific substantive constitutional guarantee other than due process. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (eighth amendment requires state to provide medical assistance to prisoners); *Mann v. City of Tucson*, 782 F.2d 790, 792–93 (9th Cir.1986) (fourth amendment violation alleged).

We have also observed that state officers' inaction, as well as their affirmative acts, may be the basis for section 1983 claims. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978) (a state officer may deprive an individual of a constitutional right if he "omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made"). *See also Estelle*, 429 U.S. at 104, 97 S.Ct. at 291 (holding that "deliberate indifference" to prisoners' serious medical needs violates the eighth amendment). Yet the injury must be loss of a right secured by the Constitution or federal law. In this case, plaintiffs must show not merely that the officers' failure to intervene bore a causal relationship to the death, but that the failure denied Medina due process of law.

The Supreme Court's decision in *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), illustrates the principle that state officials do not violate due process rights, and hence are not liable under section 1983, for every injury in which they play some causal role. *Martinez,* like this case, involved issues of state officers' liability under section 1983 for a death at the hands of a third party. The Court there held that a state parole board was not liable under section 1983 for a murder committed by a parolee five months after his release. In so holding, the Court stressed that the issue was one of deprivation of due process within the meaning of the fourteenth amendment and that concepts of causation and duty under state tort law were irrelevant. The Court stated:

> Regardless of whether, as a matter of state tort law, the parole board could be said either to have had a "duty" to avoid harm to his victim or to have proximately caused her death ... we hold that ... appellees did not "deprive" appellants' decedent of life within the meaning of the Fourteenth Amendment.

*Id.* at 285, 100 S.Ct. at 559 (citations omitted).

In reaching this conclusion, the Court noted that the parolee was not an agent of the parole board, nor was the parole board aware of a special danger to the decedent.

*Martinez* did not deal with a situation like this one in which officers were present at the scene of a crime. Its holding is therefore suggestive, but not controlling, of the result we should reach here, where the issue concerns whether police officers have violated due process principles in failing to intervene to protect a member of the public from harm.

An obligation to protect may arise when the state itself has put a person in danger. State officers may then be under a duty to act to protect that individual. As the Seventh Circuit has warned:

> We do not want to pretend that the line between action and inaction, between inflicting and failing to prevent the inflic-

tion of harm, is clearer than it is. If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit.

*Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982); *see also Walker v. Rowe,* 791 F.2d 507, 511 (7th Cir.1986). Here, however, the officers did not create or exacerbate the danger.

Leading decisions in the Fourth Circuit also have looked to the relationship between the state and the victim. In *Jensen v. Conrad,* 747 F.2d 185 (4th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1754, 84 L.Ed.2d 818 (1985), the Fourth Circuit traced the history of cases that have found a duty to protect when there is a "custodial or other relationship" between the state and the individual. *See Fox v. Custis,* 712 F.2d 84 (4th Cir.1983). The Fourth Circuit explained:

> The constitutional right that we asserted [in previous cases] could arise was clearly based on the fourteenth amendment, but the shape and definition that we gave to that right by using the term "custodial or other relationship" was influenced in large part by the considerations that lay behind the eighth amendment cases. Recognizing that the fourteenth amendment could not be read to establish a general affirmative duty to the public at large, we chose to limit that duty by applying a rationale similar to that used in *Estelle:* namely, that where the state had selected an individual from the public at large and placed him in a position of danger, the state was enough of an "active tortfeasor" to make it only "just" that the state be charged with an affirmative duty of protection.... [That] right to protection could arise from a custodial or other relationship.

*Jensen* 747 F.2d at 193–94 (emphasis omitted). The *Jensen* court suggested that to determine whether a "custodial or other relationship" existed for purposes of creating a duty of protection, a court could look

to whether the victim was in the state's custody; whether the state affirmatively committed itself to protecting the victim; and whether the state knew of the victim's plight. *Id.* at 194 n. 11.

A guiding principle which flows from these decisions is that in the absence of some special relationship to the victim, government officials generally are not liable under section 1983 for their failure to protect citizens from dangerous situations which state officials neither created nor exacerbated. This principle is apparent in other decisions as well. *See, e.g., Beard v. O'Neal,* 728 F.2d 894, 899–900 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 104, 83 L.Ed.2d 48 (1984) (FBI informant had no constitutional duty to prevent a murder by a third party); *Jackson v. City of Joliet,* 715 F.2d 1200, 1204–06 (7th Cir.1983), *cert. denied,* 465 U.S. 1049, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984) (no constitutional duty on the part of state officers to rescue the plaintiff in a non-negligent manner); *Orpiano v. Johnson,* 632 F.2d 1096, 1101–03 (4th Cir.1980) (prison officials not liable when there is no pervasive risk of harm to prisoner), *cert. denied,* 450 U.S. 929, 101 S.Ct. 1387, 67 L.Ed.2d 361 (1981). For further discussion and authorities, see S. Nahmod, *Civil Rights & Civil Liberties Litigation* § 3.08, at 124 (Supp.1985).

The undisputed facts in this case provide no basis for the imposition of liability under section 1983 under any of the theories we have discussed. Plaintiffs have not shown any egregious misconduct on the part of the officers. Nor have they demonstrated that any custodial or other special relationship existed between the officers and the victim, or that the state created or even contributed to the risk of harm. Plaintiffs' claim amounts to no more than a claim of negligence, which is no longer actionable under section 1983. *Daniels v. Williams,* —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), overruling

*Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Maddox v. City of Los Angeles,* 792 F.2d 1408, 1413–1414 (9th Cir.1986).[1] We therefore affirm the district court's summary judgment in favor of the defendants.

Affirmed.

---

**1.** Earlier decisions involving claims of state officers' failure to protect that have been held to be actionable under section 1983 rest on an obsolete foundation to the extent they rely upon *Parratt*'s holding that negligence is actionable under section 1983 as a violation of due process. *See, e.g., Hirst v. Gertzen,* 676 F.2d 1252, 1263 (9th Cir.1982).