William DOMINQUE, Plaintiff-Appellee,

v.

James A. TELB, Sheriff; et al., Defendants,

Jimmy G. Putnam, Assistant Deputy Director, Defendant-Appellant.

No. 86–3763.

United States Court of Appeals, Sixth Circuit.

Argued May 5, 1987.

Decided Oct. 23, 1987.

Thomas A. Kulick (argued), Asst. Atty. Gen., Corrections Div., Lansing, Mich., for defendant-appellant.

Joseph P. Dawson (argued), Cox & Vassar, Toledo, Ohio, for plaintiff-appellee.

Before LIVELY, Chief Judge, and ENGEL and KRUPANSKY, Circuit Judges.

ENGEL, Circuit Judge.

This appeal requires us to address further the procedural problems which arise in framing and resolving, before trial, claims of qualified immunity in civil rights actions against public officers. *See generally, Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); and *Kennedy v. City of Cleveland,* 797 F.2d 297 (6th Cir.1986).

In *Mitchell v. Forsyth,* the question whether the Attorney General's action was clearly proscribed by federal constitutional law at the time it was taken was not a particularly difficult one, once his conduct was determined to be potentially subject to the defense of qualified, but not absolute immunity. At the time the Attorney General made his determination, the law was uncertain whether he could authorize the challenged wiretaps in the good-faith belief that they were not prohibited by the federal wiretapping statute because of their involvement with national security. It was

only after *United States v. United States District Court*, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), that such action could clearly be said to have violated federal law. Therefore, the court in *Mitchell v. Forsyth* held that the Attorney General was entitled to a defense of qualified immunity and dismissed the claims against him because the law was unsettled at the time of his action. *Mitchell v. Forsyth*, 472 U.S. at 530–36, 105 S.Ct. at 2821. The Supreme Court's recognition in that case of the right to appeal the denial of this defense before trial, and in some cases even before discovery, was the subject of our opinion in *Kennedy v. City of Cleveland, supra.* The issue of whether the law was clearly established at the time is more complicated in this appeal, and hence this case more likely typifies appeals arising under *Harlow v. Fitzgerald, Mitchell v. Forsyth,* and *Kennedy.*

Defendant Jimmy G. Putnam is the Assistant Deputy Director of the Michigan Department of Corrections. He appeals an order of a United States Magistrate, upheld by the district court, denying his motion to dismiss because of good-faith immunity the plaintiff's civil rights claim under 42 U.S.C. § 1983. The section 1983 claim alleges that Putnam, by filing an unlawful detainer, deprived Dominque of his liberty without due process of law in violation of the Fifth and Fourteenth Amendments. The district court dismissed Dominque's complaint under section 1985 and his claims against the other defendants, but denied Putnam's combined motion for dismissal and for summary judgment as to the section 1983 claim on the ground that there were material issues of fact concerning Putnam's defense of qualified immunity. Putnam's notice of appeal was timely, and specifically confines itself to the order entered July 14, 1986, denying his motion to dismiss plaintiff's 42 U.S.C. § 1983 claim.

In 1970, plaintiff Dominque was sentenced by the Michigan courts to serve a 15–year sentence for robbery. In 1976, Dominque escaped from confinement in Michigan and committed an armed robbery in Ohio. Thereafter apprehended in Michigan, he was held in the Monroe County Jail on Michigan charges of carrying a concealed weapon and possessing stolen property. Dominque waived extradition to Ohio to face the robbery charges in exchange for the dismissal of the described Michigan criminal charges. On that day, however, the Michigan Department of Corrections filed a detainer with Monroe County authorities. Extradited to Ohio, he was convicted and sentenced in Ohio, but was released in 1979 by authorities there. No detainers had been filed with them against such release. In 1981, Dominque was arrested and convicted for a minor theft offense, but was released in 1982 when there were again no detainers prohibiting such release.

On December 4, 1984, Dominque was stopped for a traffic offense in Ohio. Although plaintiff's outstanding Ohio traffic violation charge was disposed of, plaintiff was detained without bond because defendants had forwarded to the Lucas County Sheriff's Department a detainer and an administrative warrant for the return of plaintiff as an escaped inmate based upon his alleged unauthorized leave taken in January, 1976. According to plaintiff, he had, through counsel, informed Putnam that under established law, the Michigan Department of Corrections had waived jurisdiction over him by waiting an unreasonable time to file the detainer. He also asserted that Putnam had wrongfully denied the waiver and had wrongfully disputed the alleged action of an unknown employee/agent of the Department of Corrections who had not earlier placed a detainer for the plaintiff's return from the State of Ohio, even though he had known of plaintiff's actual incarceration and whereabouts. Plaintiff's petition for habeas corpus filed in the Ohio courts, challenging the Michigan detainer and plaintiff's return on the Michigan administrative warrant, was denied. Plaintiff was thereupon returned to Michigan after Ohio Governor Celeste issued a warrant of arrest and extradition.

We note initially that a serious question is raised whether an individual incarcerated under state law may maintain a civil rights action alleging unconstitutional activity on

the part of the state officers which if proved might bear upon his right to release from incarceration even though that was not directly sought. Plaintiff's complaint appears to allege that he remains incarcerated in Michigan due to the execution of the void warrant. Serious questions exist, therefore regarding the propriety of a civil rights action which in essence challenges the validity of incarceration, which, absent a direct appeal in Michigan courts, could be remedied only by writ of habeas corpus. *Preiser v. Rodriguez,* 411 U.S. 475, 490, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973). Since appeals authorized by *Mitchell v. Forsyth* and *Kennedy v. City of Cleveland* are limited, however, we address only the narrow question of defendant Putnam's right to avoid defending a civil rights action against him personally and/or his right to avoid liability upon a proper claim of qualified immunity. Under these circumstances we therefore expressly refrain from addressing the question of the propriety of this civil rights action, but see *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).[1]

We construe the overall complaint, while somewhat ambivalently worded, as clearly seeking money damages from defendant Putnam in his individual capacity. It seems also that the district judge proceeded on that assumption, and we think this analysis entitles Putnam to a determination from the district court, and on appeal therefrom if adverse to him, whether he must bear the burden and expense of standing trial regarding his personal liability. *See Kennedy,* 797 F.2d at 298–99.[2]

The order and opinion of the district judge, which adopted the report and recommendations of the magistrate, denied summary judgment for the following reasons:

[D]efendant argues that plaintiff's action is barred because the defendants enjoy qualified immunity from damage liability under 42 U.S.C. § 1983. Defendant directs the Court's attention to *Procunier v. Navarette,* 434 U.S. 555 [98 S.Ct. 855, 55 L.Ed.2d 24] (1978), where the Supreme Court held that prison officials and officers have a qualified immunity under 42 U.S.C. § 1983. Further, in *Harlow v. Fitzgerald,* 457 U.S. 800 [102 S.Ct. 2727, 73 L.Ed.2d 396] (1982), the Court held that this qualified immunity bars suits against the defendant official unless he knew or should have known that his conduct violated clearly estab-

---

1. The *Preiser v. Rodriguez* issue was raised by the Ohio authorities who were also originally joined in this action. Based upon that decision, the trial court dismissed the civil rights action against the Ohio authorities who then held Dominque in custody. In a memorandum opinion and order dated March 28, 1985, United States District Judge John W. Potter declined to entertain plaintiff's application for temporary and preliminary injunctive relief because of the pendency of Dominque's petition for writ of habeas corpus in the Court of Appeals in Lucas County, Ohio, alleging (as he did in the instant case) that the Michigan administrative warrant was void as violative of his constitutional rights to due process. He also took into account the pendency before the Lucas County Common Pleas Court of an extradition proceeding under ORC 2963.01 and noted the issuance by the governor of Ohio of his warrant of arrest for Dominque. Essentially Judge Potter deferred to the state authorities with respect to Dominque's detention and confinement. Nonetheless, he retained jurisdiction and denied without prejudice defendant's motion as it applied to Dominque's prayer for damages, giving defendant leave to file a similar motion for summary judgment at a later date. Judge Potter recognized that the plaintiff had alleged that defendants Putnam and Turner through December 4, 1984 knew that the administrative warrant was untimely, and yet pursued its enforcement. Judge Potter recognized under *Preiser* "that in the case of a damage claim, habeas corpus is not the appropriate or available federal remedy," but that under existing case law it was appropriate to stay his hand in cases seeking damages from the same facts "where disposition of the damage claim would involve a ruling implying that the state conviction is or would be illegal ... The general rule in civil rights actions is now clearly established that exhaustion of state remedies is not a prerequisite," citing *Guerro v. Mulhearn,* 498 F.2d 1249, 1251 (1st Cir.1974).

2. Certainly the defendant's right to the earliest practical resolution of his qualified immunity claim, if favorable to him, overrides in importance the delay in resolving a possible habeas corpus claim. To force defendant to wait until conclusion of the habeas corpus proceeding before seeking severance from the instant litigation would in our judgment be unduly burdensome and inconsistent with the concerns of *Mitchell.*

lished rights. *Id.* at 815–19 [102 S.Ct. at 2736–39].

As plaintiff points out, defendant has failed to demonstrate that he is entitled to qualified immunity under § 1983 in this cause. The determinative question is whether defendant Putnam knew or should have known that his actions violated plaintiff's established rights. Plaintiff maintains that defendant did know that he was violating plaintiff's rights at the time of the violation. Defendant, however, merely contends that he is entitled to good faith immunity without offering the court any support for his contention. Clearly, there is a genuine issue of material fact in dispute regarding whether defendant Putnam knew or should have known that his actions, issuing and enforcing the allegedly unlawful detainer against plaintiff, violated plaintiff's clearly established rights. Accordingly, I find that defendant's second basis for summary judgment is not well taken.

While the district judge's opinion is accurate in many respects, we think it misconstrues the thrust both of the Supreme Court cases such as *Mitchell v. Forsyth* and the more recent language of our decision in *Kennedy.* The important question concerns which party bears the burden of going forward once the defendant raises the qualified immunity defense. As evidenced by its opinion, the trial court placed upon the defendant the entire burden to justify his entitlement to qualified immunity. This was error.

> [T]he plaintiff must plead facts which, if true, describe a violation of a clearly established statutory or constitutional right of which a reasonable public official, under an objective standard, would have known. The failure to so plead precludes a plaintiff from proceeding further, even from engaging in discovery, since the plaintiff has failed to allege acts that are outside the scope of the defendant's immunity. *Mitchell,* [472 U.S. at 526, 105 S.Ct. at 2815; *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Harlow,* 457 U.S. at 817–818, 102 S.Ct. at 2737–2738].

*Kennedy,* 797 F.2d at 299. See *Anderson v. Creighton,* 107 S.Ct. at 3038. Plaintiff's failure to satisfy his burden subjects his pleadings to dismissal at that stage.

Because the nature of the immunity issue is such that the official must assert it in the first instance, *see Kennedy,* 797 F.2d at 300, a civil rights plaintiff is not bound as a matter of law to anticipate such a defense in his pleading. However, where as here plaintiff seeks damages from the defendant in his individual capacity for an act committed under color of law, we believe that he should normally include in the original complaint all of the factual allegations necessary to sustain a conclusion that defendant violated clearly established law. If he does not, however, and if a qualified immunity challenge is made to the complaint, then, we believe, the court must accord the plaintiff an opportunity to come forward with such additional facts or allegations that show not only violations of his constitutional rights, but also that these rights were so clearly established when the acts were committed that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct. *Anderson v. Creighton,* 107 S.Ct. at 3039.

Even though qualified immunity is an affirmative defense, the district court should not require the defendant to prove, upon penalty of denial of his motion, that the conduct plaintiff alleged did not violate clearly established law. Nor does any dispute regarding whether defendant should have known such conduct violated clearly established law create "a genuine issue of material fact" so as to preclude summary judgment. Rather, under these circumstances, the district court must decide the purely legal question of whether the law at the time of the alleged action was clearly established in favor of the plaintiff. A decision for the plaintiff on this issue enables the defendant to perfect an appeal if he disagrees with the trial court's legal result. Pending resolution of the qualified immunity issue on appeal, the defendant may not be subjected to further discovery.

We believe that the cited language from the district court's opinion demonstrates two errors in that court's analysis. First, it mischaracterizes as a material dispute of fact the legal question of whether the defendant should have known that his alleged acts violated clearly established rights at the time. Second, it thrusts upon the defendant the court's own duty to resolve that issue.

While qualified immunity is a defense which must be affirmatively asserted, see *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), its potential applicability will usually appear, as here, in the allegations of the complaint, since an essential element of section 1983 is that the defendant was then acting under color of state law. Thus, before filing a formal affirmative defense in his answer, the defendant could properly challenge the sufficiency of the complaint under F.R.C.P. 12(b)(6) on the basis that he was entitled to a qualified immunity because the facts pleaded would not show that his conduct violated clearly established law of which a reasonable person should have known at the time. Once the defense was raised, the trial judge would normally elicit briefs from the parties regarding whether those acts when committed violated clearly established federal law. Resolution of that issue is purely a matter of law for the trial judge to determine, or for us to decide on any appeal which might be taken. Since the question is one of law, the trial court could not, by characterizing it as a disputed factual issue, avoid deciding whether the detainer or administrative warrant was unlawful, and, if so, whether the issuance of the warrant or the placing of such detainer at that time violated clearly established federal rights. The source for such determination is, of course, in federal constitutional, statutory or case law existing at the time. Any decision of the trial court should indicate that law and state the basis for its conclusion. If the complaint itself is ambiguous in its factual allegations, and if that ambiguity results in a determination that under one set of facts the plaintiff's federal rights were violated and in another they were not, then presumably the district court can so hold, and the matter may then either be appealed or proceed on to the discovery stage, after which it might be possible to resolve the issue by appropriate motion for summary judgment. *Anderson v. Creighton*, 107 S.Ct. at 3042–43 n. 6.

The thrust of our opinion is to observe that under *Mitchell v. Forsyth*, the trial judge is burdened with a responsibility at an early stage, to make determinations of law based upon what the clearly established law governing the case was at the time of the challenged acts. Once the issue of qualified immunity is properly injected in the case either by a motion to dismiss, an affirmative defense, or a motion for summary judgment, the plaintiff is obliged to present facts which if true would constitute a violation of clearly established law. *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815. Necessarily, both parties have a great interest in ascertaining and in presenting their views concerning what the clearly established law was at that time; the judge however bears the ultimate responsibility to resolve the question.

Normally, of course, questions of law are always subject to a review as a matter of law upon appeal. Thus a remand would not typically be necessary, for an appellate court would presumably be in as good a posture to decide these questions as a trial court. *Nixon v. Fitzgerald*, 457 U.S. 731, 743 n. 23, 102 S.Ct. 2690, 2698 n. 23, 73 L.Ed.2d 349 (1982); *Mitchell*, 472 U.S. at 530, 105 S.Ct. at 2818. Here, the legal question has not been directly addressed by the trial court nor has it been adequately briefed by the parties before us, nor we suspect strongly, in the district court. Good practice suggests that an early and proper resolution of this question at the district court stage would go far to avoid unnecessary appeals and even continuing litigation in many cases. We realize, of course, that the procedural aspects of the law of qualified immunity have been uncertain, and that the approach taken by the trial court and by the parties here did not differ materially from the commonly taken prior to *Mitchell* and our decision in *Kennedy*.

Accordingly, we VACATE the judgment of the district court and REMAND the cause for further proceedings consistent herewith.