Mitchell B. TUCKER, Plaintiff–Appellee,

v.

Jack CALLAHAN; Carl Glasgow; Ben Brewer; City of New Johnsonville (88–5102/5179); Wilburn Springer, Officer, (88–5103/5153), Defendants–Appellants.

Nos. 88–5102, 88–5103, 88–5153 and 88–5179.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 6, 1988.

Decided Feb. 9, 1989.
Rehearing and Rehearing En Banc Denied March 28, 1989.

See also 663 F.Supp. 375.

Bob Lynch, Jr., J. Graham Matherne (argued), Aleta Arthur, Gilbert & Milom, Nashville, Tenn., for plaintiff-appellee.

Charles H. Griffith (argued), Waverly, Tenn., defendants-appellants.

Darrell G. Townsend (argued), Howell, Fisher, Branham & North, Nashville, Tenn., for Wilburn Springer.

Before KRUPANSKY and RYAN, Circuit Judges; and PECK, Senior Circuit Judge.

RYAN, Circuit Judge.

Defendants appeal from the district court's order denying their motion to dismiss plaintiff's § 1983 claim on grounds of immunity. Because we conclude that the district court erred in denying defendant Springer's motion, we reverse.[1]

### I.

Because this case comes before the court on a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6), all of the facts alleged in plaintiff's complaint are presumed to be true for purposes of this appeal. *Ana Leon T. v. Federal Reserve Bank of Chicago*, 823 F.2d 928, 930 (6th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987). Plaintiff alleges that early on the morning of March 9, 1986, he and several of his co-workers were at the Harbour Inn, a tavern located in New Johnsonville, Tennessee. The group arrived at the Harbour Inn at approximately 12:30 a.m., and stayed until closing time, approximately 2:00 a.m. After plaintiff left the Harbour Inn, and was proceeding across the parking lot toward his car, he was accosted by several individuals, including Eddie Lee Sparks. During the ensuing scuffle, plaintiff was kicked in the back of his neck, head, and shoulders by Sparks. Throughout the confrontation, defendant Wilburn Springer, an officer with the New Johnsonville Police Department, sat in his car observing the scuffle some thirty yards from the spot where plaintiff was beaten. Plaintiff has alleged that "Defendant Springer was on duty at the time of the beating, observed the beating and did not take any action to prevent or control the incident."

After the altercation was over, Officer Springer drove the short distance from where he had been parked to the area of

---

1. The district court's order denied the motions to dismiss brought by all the individual defendants. However, the court's memorandum opinion discussed only the issues pertaining to defendant Springer. The court did not address the separate question of whether the other defendants, the mayor, police commissioner, and police chief of New Johnsonville, Tennessee are entitled to immunity from damages. "Under these circumstances, we find it appropriate to refrain from expressing an opinion on the merits" of plaintiff's claim against the supervisory defendants. *Jones v. Duncan*, 840 F.2d 359, 361 n. 2 (6th Cir.1988). We therefore remand Nos. 88–5102 and 88–5179 to the district court with instructions to consider separately the issue of whether the supervisory defendants are entitled to qualified immunity.

the beating. Although plaintiff had been severely injured as a result of the beating, Officer Springer made no effort to call for emergency assistance, but instead ordered plaintiff's co-workers to remove him from the parking lot. Plaintiff is now a quadriplegic, and his condition is diagnosed as permanent. Moreover, his condition, it is alleged, was either caused or substantially aggravated by being moved as ordered by defendant Springer.

Plaintiff has further alleged that Officer Springer had previously arrested Sparks, the person who kicked and beat plaintiff, for fighting on the premises of the Harbour Inn. Plaintiff alleged that Officer Springer was aware of an agreement between the City of New Johnsonville and the Harbour Inn under which the New Johnsonville Police Department would assume responsibility for controlling behavior in the Harbour Inn parking lot. Defendant Springer was also aware that the parking lot of Harbour Inn had been the site of violence, problems, and complaints in the preceding months. Moreover, on the evening of March 8, 1986, a few hours before the fight, Springer had seen Eddie Lee Sparks on the premises of the Harbour Inn, and knew that he had been previously barred from the Harbour Inn because he was violence-prone. Furthermore, he was informed by the manager of the Harbour Inn, Vetric Cook, that Sparks had been in the Harbour Inn earlier in the evening. Cook asked Springer to keep Sparks off the premises.

Plaintiff initially filed a complaint in the district court on August 19, 1986, and defendant Springer filed a motion to dismiss on December 23, 1987, on grounds of qualified immunity. The district court issued an order denying the motion on January 14, 1988, holding that plaintiff had alleged facts which, if true, establish a "special relationship" between the plaintiff and the defendant thus avoiding, at least at the pleading stage, the defense of qualified immunity. The court found this special relationship in the special danger which plaintiff, as distinguished from the public at large, faced based on the following facts which plaintiff has alleged:

(1) that defendants knew or should have known that an agreement had existed between the City of New Johnsonville and the Harbor [sic] Inn under which the New Johnsonville Police Department assumed the responsibility of controlling any activity in the parking lot of the Harbor [sic] Inn;

(2) that defendants were aware that violent behavior, open drinking, and frequent scuffles and fights routinely occurred at the Harbor [sic] Inn;

(3) that defendant Springer, who was the only police officer on duty the night Sparks attacked Tucker, knew that Sparks was loitering in the parking lot of the Harbor [sic] Inn that night;

(4) that defendant Springer knew that Sparks was prone to violence;

(5) that defendant Springer had arrested Sparks on a prior occasion for fighting in the parking lot of the Harbor [sic] Inn;

(6) that defendant Springer knew that Sparks was barred from the Harbor [sic] Inn's premises on the night Sparks attacked Tucker;

(7) that at approximately 11:00 p.m. on the night Sparks attacked Tucker, the night manager of the Harber [sic] Inn informed defendant Springer that Sparks had been in the Harbor [sic] Inn and presently was in the parking lot, and asked defendant Springer to remove Sparks from the premises;

(8) that defendant Springer deliberately chose not to remove Sparks from the premises;

(9) that at approximately 2:00 a.m. the following morning, while defendant Springer was parked approximately thirty yards from the parking lot of the Harbor [sic] Inn in plain view of the incident, Sparks attacked Tucker without provocation; and

(10) that defendant Springer observed the attack, but consciously and deliberately chose not to intervene, prevent, or control the incident.

Because of these facts, the district court found that defendant Springer "had a constitutional duty to intervene and stop the

attack, provided that he could do so with reasonable safety." The district court further concluded that defendant Springer had a duty to provide aid and medical assistance because he had affirmatively intervened by ordering plaintiff's co-workers to move plaintiff. Thus, the district court concluded that Officer Springer was not entitled to qualified immunity because plaintiff had alleged facts which, if proven, would establish that defendants had violated plaintiff's "clearly established" constitutional rights. For this reason, the district court denied defendant's motion to dismiss. This appeal followed.[2]

## II.

It is now well-established that some government officials in the course of performing official duties are entitled to a qualified immunity from suit for civil damages. The Supreme Court announced the standard for applying this qualified immunity doctrine in *Harlow v. Fitzgerald:*

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly established statutory or constitutional rights* of which a reasonable person would have known.
>
> \*      \*      \*      \*      \*      \*
>
> If the law *at that time* was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (emphasis added).

The Supreme Court has recognized that the determination of whether a legal rule is "clearly established" at the time an official action is taken generally depends on the " 'objective legal reasonableness' " of the action taken. *Anderson v. Creighton*, 483 U.S. 635, —— 107 S.Ct. 3034, 3038, 97

L.Ed.2d 523, 530 (1987) (quoting *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2739). The Court further observed:

> The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow....* It should not be surprising, therefore, that our cases established that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at ——, 107 S.Ct. at 3038–39, 97 L.Ed.2d at 530–31 (citations omitted). This court has held that "[i]n order to be clearly established, a question must be decided either by the highest state court in the state where the case arose, by a United States Court of Appeals, or by the Supreme Court." *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir.1988). With these considerations in mind, it is now necessary to analyze the specific constitutional rights

---

**2.** Defendants filed their appeal pursuant to *Mitchell v. Forsythe*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985) ("a district court's denial of a claim of qualified immunity, to the extent that it turns on a question of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment").

which plaintiff alleged Officer Springer violated.

## III.

Plaintiff first alleges that defendant Springer deprived him of liberty and property without due process of law in violation of the fourteenth amendment by failing to intervene and prevent Eddie Lee Sparks from inflicting the beating upon him in the parking lot of the Harbour Inn. Plaintiff concedes that " 'there is no constitutional right to be protected by the state against being murdered by criminals or madmen.' " *Janan v. Trammell*, 785 F.2d 557, 560 (6th Cir.1986) (quoting *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir.1982)). This is true because it must be the action of the state (or one acting under color of state law), as distinguished from the action of a private party, that deprives plaintiff of life, liberty, or property without due process of law. However, plaintiff argues that it was "clearly established" on March 9, 1986 that if a "special relationship exists between the victim and the state, a § 1983 action for violation of plaintiff's due process rights can be maintained." *Janan*, 785 F.2d at 560; *Ellsworth v. City of Racine*, 774 F.2d 182, 185 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). This "special relationship" must arise "in regard to *particular people.*" *Ellsworth*, 774 F.2d at 185 (emphasis added). Plaintiff alleged, and the district court held, that a "special relationship" existed between plaintiff and Officer Springer as a result of, *inter alia*, the agreement under which the City of New Johnsonville Police Department promised to maintain control in the Harbour Inn parking lot, Officer Springer's knowledge of past incidents of violence in the parking lot, and Officer Springer's presence during the actual beating.

It is worth repeating that under the Supreme Court's standard for determining whether a particular rule of law is "clearly established," plaintiff must do more than show that a generalized, abstract constitutional right exists; "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Anderson*, 483 U.S. at ——, 107 S.Ct. at 3039, 97 L.Ed.2d at 531. Thus, plaintiff in this case must do more than generally allege that a "special relationship" existed between him and Officer Springer; he must show that a reasonable police officer, standing in Officer Springer's shoes, would know, based upon decisions of the United States Supreme Court and United States Courts of Appeals then available, that a "special relationship" had arisen between himself and plaintiff as a result of the factors he cites.

■ Review of the case law existing on March 9, 1986 reveals that it was not "clearly established" that a "special relationship" existed between Springer and Tucker given the situation faced by Officer Springer. First, it is clear that the mere fact that Officer Springer observed the beating without intervening does not establish a "special relationship" such that plaintiff obtained a constitutional right to state intervention. In *Escamilla v. City of Santa Ana*, 796 F.2d 266 (9th Cir.1986), undercover police officers were present in a restaurant when a fight broke out. The officers knew that one of the participants had a criminal record and they saw a gun protruding from his pocket. Further, they heard another participant in the fight tell a friend to get a gun. Nevertheless, the officers failed to intervene, shots were fired, and a stray bullet killed plaintiff's decedent, a bystander who was not involved in the fight. *Id.* at 267. The court concluded that no "special relationship" existed between the victim and the government officials. *Id.* at 270.[3]

---

3. *Escamilla* was decided on July 31, 1986, nearly five months after the incident at issue in this case. Nevertheless, it is relevant to the question of whether plaintiff can show that defendants violated a constitutional right that was "clearly established" at the time the actions took place because the burden is upon plaintiff to demonstrate that a "clearly established" right existed at

■ Plaintiff's claim that a "special relationship" was established by virtue of the city's agreement to control behavior in the Harbour Inn parking lot must also be rejected. Plaintiff has cited no case, decided either before or after 1986, in which a court has found a "special relationship" in the absence of governmental action directed at "the victim, as distinguished from the public at large...." *Janan*, 785 F.2d at 560. Here, the alleged agreement between the city and the Harbour Inn management with regard to the Harbour Inn parking lot created no "special relationship" between the city and *plaintiff.* At most, the agreement extended the New Johnsonville Police Department's sphere of influence from the city streets into the Harbour Inn parking lot. But plaintiff stands in the same shoes as any other member of the general public who happened to be present in the Harbour Inn parking lot. Similarly, the fact that violence had occurred previously in the Harbour Inn parking lot does not establish a "special relationship" between plaintiff as an individual and the city. Thus, Officer Springer had no "special relationship" with plaintiff, as distinguished from the rest of the general public.

We hold that the district court erred in concluding that Officer Springer violated plaintiff's clearly established constitutional rights by failing to intervene and prevent the beating which plaintiff suffered at the hands of Sparks.

## IV.

■ Plaintiff also alleges that Officer Springer violated his "clearly established" constitutional rights by failing to provide medical assistance after the beating occurred, and by ordering plaintiff's co-workers to move plaintiff from the Harbour Inn parking lot. The failure to provide medical assistance is not actionable under § 1983 for the same reason that the failure to intervene in the fight is not: in neither case did the state actor *cause* the injury of which plaintiff complains. However, with respect to the claim that Officer Springer violated plaintiff's clearly established constitutional rights by ordering plaintiff's companions to move plaintiff, assuming as we must for Rule 12(b)(6) purposes the truth of plaintiff's allegations of injury causation, we find that defendant, acting under color of state law, caused plaintiff's injury. If Officer Springer had moved plaintiff himself, it would be self-evident that he, as a state actor, caused plaintiff's injury. That Springer did not move plaintiff personally, but rather ordered plaintiff's companions to move him, does not alter this conclusion. It was Officer Springer's order which was a direct cause of plaintiff's injury—by substantially aggravating the injuries plaintiff sustained as a result of the beating.

Nevertheless, plaintiff's claim with respect to the move raises a different objection. Officer Springer's conduct, at most, was grossly negligent. Assuming without deciding that Springer's actions constituted gross negligence, plaintiff's claim must fail because at the time of the injury it was not "clearly established" that gross negligence was a sufficient basis for a cause of action under § 1983 for violation of the due process clause.

Prior to 1986, mere negligent conduct by a government official could constitute a violation of the due process clause. *Parratt v. Taylor,* 451 U.S. 527, 536–37, 101 S.Ct. 1908, 1913–14, 68 L.Ed.2d 420 (1981). However, in January 1986 the Supreme Court overruled *Parratt* and held that "mere lack of due care by a state official [does not] 'deprive' an individual of life, liberty or property under the Fourteenth Amendment." *Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 665–66, 88 L.Ed.2d 662 (1986). The *Daniels* Court specifically refused "to consider whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause." *Id.* at 334 n. 3, 106 S.Ct. at 667 n. 3.

that time. The Ninth Circuit's decision five months later that the right did not exist, with no indication that the court was overturning then- existing law, suggests that plaintiff failed to meet his burden.

This court, sitting *en banc*, subsequently held that a violation of the due process clause does occur when a government official "intentionally does something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow." *Nishiyama v. Dickson County, Tenn.*, 814 F.2d 277, 282 (6th Cir. 1987) (en banc). But we did not decide *Nishiyama* until March 18, 1987, over a year after the events at issue in this case took place. Thus, at the time of the injury in this case, the issue of whether gross negligence by a state official was a sufficient basis to establish a violation of the due process clause had not been resolved; therefore, it was not clearly established at the time that if defendant was grossly negligent in ordering plaintiff moved, this action violated the due process clause. Therefore, we hold that Officer Springer is immune from damages arising out of his order that plaintiff be moved. The district court's refusal to dismiss the plaintiff's complaint against Springer was error.

## V.

▮ Finally, plaintiff requests that if this court concludes that his complaint is deficient with regard to the qualified immunity defense raised by defendants, he be allowed "to amend his pleadings to more clearly state the special relationships and/or conscious failure to supervise and/or train which are present in this case." Plaintiff relies on this court's decision in *Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir.1987) as authority for the granting of such a request.

The court in *Dominque* described the proper procedure which a district court should follow after a defendant asserts a claim of qualified immunity:

> Because the nature of the immunity issue is such that the official must assert it in the first instance, a civil rights plaintiff is not bound as a matter of law to anticipate such a defense in his pleading. However, where as here, plaintiff seeks damages from the defendant in his individual capacity for an act committed under color of law, we believe that he should normally include in the original complaint all of the factual allegations necessary to sustain a conclusion that defendant violated clearly established law. If he does not, however, and if a qualified immunity challenge is made to the complaint, then, we believe, the court must accord the plaintiff an opportunity to come forward with such additional facts or allegations that show not only violations of his constitutional rights, but also that these rights were so clearly established when the acts were committed that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct.

*Id.* (citations omitted).

As the above passage makes clear, our concern in *Dominque* was that a civil rights plaintiff might fail to plead facts which demonstrate that the violation of which he complains was not "clearly established" at the time defendants took the alleged actions. The *Dominque* court did not intend to automatically confer the right to replead upon all civil rights plaintiffs who have their complaint dismissed on the basis of qualified immunity. Rather, our plain objective was to insure that the peculiar procedural development of civil rights actions in which defendants plead qualified immunity does not deprive civil rights plaintiffs of the opportunity to present facts which may refute defendants' claim of qualified immunity.

Applying this principle to the case at bar, it is apparent that *Dominque* does not require this court to allow plaintiff to replead with respect to his claim that defendant Springer violated his rights by not intervening in the altercation in the parking lot. Plaintiff's claim against Springer for his inaction during the scuffle would have failed to state a claim even if Springer did not enjoy the benefits of qualified immunity. The claim failed because plaintiff did not allege facts which would indicate that a "special relationship" existed between

plaintiff and Springer. The failure to allege such facts would have been fatal to plaintiff's claim even if the doctrine of qualified immunity did not exist because not only was such a claim not "clearly established" in 1986, but it is also non-existent today. Therefore, the holding of *Dominque* does not apply, and we refuse to grant plaintiff leave to replead his claim against Springer for inaction during the fight.

We also decline to grant plaintiff leave to replead his claim against Springer for his order that plaintiff be moved. This claim failed because it was not clearly established at the time that gross negligence violated the due process clause. Here too the rationale underlying *Dominque* does not apply because there are no "additional facts or allegations that show not only violations of his constitutional rights, but also that these rights were ... clearly established when the acts were committed...." 831 F.2d at 676. For this reason, granting plaintiff the opportunity to replead would be pointless. Accordingly, we decline to do so.

### VI.

The judgment of the district court is REVERSED, and the case is REMANDED with instruction that plaintiff's claim against Officer Springer be DISMISSED.